**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SEAN WASHINGTON, | : | **Hon. Renée Marie Bumb** |
| Petitioner, | : | Civil No. 06-3546 (RMB) |
| v. | : | |
| MICHELLE RICCI, et al., | : | **O P I N I O N** |
| Respondents. | : | |

**APPEARANCES:**

> SEAN WASHINGTON, #633705B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner Pro Se

> ROBIN A. HAMETT, Acting Assistant Prosecutor
> JOSHUA M. OTTENBERG, ACTING CAMDEN COUNTY PROSECUTOR
> 25 North Fifth Street
> Camden, New Jersey 08102
> Attorneys for Respondents

**BUMB**, District Judge

Sean Washington filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment in the Superior Court of New Jersey, Camden County, on September 24, 1996, after a jury found him guilty of conspiracy to commit murder, two counts of purposeful or knowing murder, and possession of a firearm for an unlawful purpose in violation of N.J. Stat. Ann. §§ 2C:5-2, 2C:11-3a(1) & (2), 2C:39-4a.  Respondents filed an Answer, and Petitioner filed a Reply.  For the reasons expressed below, this Court will dismiss the Petition with prejudice and decline to issue a certificate of appealability.

# I.   BACKGROUND

On July 30, 1996, a jury found Petitioner and co-defendant Kevin Baker guilty of conspiracy to commit murder, two counts of purposeful or knowing murder, and possession of a firearm for an unlawful purpose in violation of N.J. STAT. ANN. §§ 2C:5-2, 2C:11-3a(1) & (2), 2C:39-4a.  By judgment of conviction entered September 24, 1996, the Law Division sentenced Petitioner to life imprisonment, with 60 years of parole ineligibility.

The pertinent facts, as recounted by the Appellate Division of the Superior Court of New Jersey, are as follows:

> In summary, the trial testimony was that minutes before 6 a.m. on January 28, 1995, Camden police were dispatched to the Roosevelt Manor housing project following a report of gunshots fired.  On arrival they saw the bodies of Rodney Turner and Margaret Wilson on the street in front of 1822 South 8th Street.  Both victims had been shot in the head at close range.  The police recovered three 9 mm shell casings, which tests revealed were fired by the same gun. No gun was ever found.
>
> The State eyewitness was Denise Rand.  She testified that about 6 a.m. on January 28, 1995, she was with her cousin Tyrone Moore outside the Roosevelt Manor housing project to purchase crack cocaine.  She admitted that she used cocaine two hours earlier.  Rand heard two to three gunshots.  She said that while Moore ran off, she remained.  She then saw Sean Washington and Kevin Baker run past her.  She knew Washington since he was a small child and Baker for a few years.  She added that before the two defendants ran by her, she saw the two victims "get shot."  At first she said she was not certain which defendant committed the homicides, but after reviewing an earlier statement, she recalled

        that Baker shot Turner and Washington shot
        Wilson.  Neither Baker nor Washington
        testified.  No witnesses or evidence was
        adduced by the defense.

State v. Washington, Docket No. A-4730-02T4 slip op., pp. 2-3

(N.J. Super., App. Div., Nov. 9, 2005).

     Petitioner appealed, and on March 17, 1999, the Appellate

Division of the Superior Court of New Jersey affirmed.  See State

v. Washington, Docket No. A-3943-96T4 slip op., p. 2 (N.J.

Super., Mar. 17, 1999).  On June 9, 1999, the New Jersey Supreme

Court denied certification.  See State v. Washington, 161 N.J.

150 (1999) (table).

     On January 4, 2000, Petitioner filed a petition for post-

conviction relief in the Law Division.  By order filed November

17, 2000, the Law Division denied post-conviction relief.  See

State v. Washington, Indictment No. 1950-08-95 order (N.J.

Super., Law Div., Nov. 17, 2000).  Petitioner filed a motion for

reconsideration, which the Law Division denied on March 1, 2001,

because it was not filed within 20 days after service of the

final order, and because the court lacked jurisdiction, as the

final order was on appeal.  Petitioner appealed, arguing he was

entitled to an evidentiary hearing, post-conviction relief

counsel was ineffective, and the Law Division judge should have

recused himself.  In an opinion filed June 27, 2002, the

Appellate Division remanded the matter to the Law Division with

instructions to afford Petitioner's counsel an opportunity to

call Dwight Collins (Petitioner's nephew and alleged alibi witness) as a witness in order that the PCR judge could assess his credibility and make a more informed decision as to whether trial counsel was derelict in failing to call the witness, and whether the testimony created a reasonable probability that the jury verdict would have been different.  <u>See</u> <u>State v. Washington</u>, Docket No. A-3140-00T4 slip op., p. 7 (N.J. Super., App. Div., June 27, 2002).

The evidentiary hearing on remand was held on March 25, 2003.  Dwight Collins testified on Petitioner's behalf.  By order filed April 3, 2003, the Law Division denied Petitioner's motion to raise new claims (ineffective assistance of prior post-conviction relief counsel), and denied the petition on the merits.  Petitioner appealed.  On November 9, 2005, the Appellate Division affirmed.  <u>See</u> <u>State v. Washington</u>, Docket No. A-4730-02T4 slip op. (N.J. Super., App. Div., Nov. 9, 2005).  The New Jersey Supreme Court denied certification on February 9, 2006. <u>See</u> <u>State v. Washington</u>, 186 N.J. 255 (2006) (table).

Petitioner executed the Petition which is now before this Court on July 28, 2006.  The Clerk received it on August 1, 2006. After receiving this Court's Order issued pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), Petitioner elected to withdraw the Petition and file one all-inclusive Petition. Consequently, this Court dismissed the Petition without prejudice by Order entered October 3, 2006.  Based on Petitioner's letter

4

request filed August 21, 2007, this Court reopened the file and ordered Respondents to file an answer.

The Petition raises four grounds:

> Ground One: PETITIONER WAS DENIED A FAIR TRIAL, DUE PROCESS AND RIGHT TO CONFRONTATION BY TRIAL COURT'S ADMISSION OF STATE'S WITNESS PRIOR INCONSISTENT STATEMENT AND LIMITATION OF CROSS EXAMINATION.
>
> Ground Two:   PETITIONER WAS DENIED A FAIR TRIAL AND DUE PROCESS BY PROSECUTORIAL MISCONDUCT WHEN THE STATE FAILED TO INFORM DEFENSE COUNSEL THAT THEIR WITNESS GAVE THEM A FICTITIOUS ADDRESS.
>
> Ground Three:   INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO INVESTIGATE, PRESENT ALIBI WITNESS, ALONG WITH OTHER EXCULPATORY WITNESSES AND PUT THE STATE'S CASE THROUGH THE MEANINGFUL ADVERSARY PROCESS.
>
> Ground Four:   THE CUMULATIVE ERRORS AND PETITIONER'S CLAIM OF ACTUAL INNOCENCE AFFORDS HIM A NEW TRIAL.

(Pet. ¶ 12.A. to 12.D.)

Respondents filed an Answer and a copy of the state court record.[1]   Petitioner filed a Reply to the Answer.

-------

[1] Respondents argued that certain claims are procedurally defaulted, and that the Petition should be denied on the merits. To the extent that Petitioner's claims are unexhausted and/or procedurally defaulted, this Court will deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).   See Taylor v. Horn, 504 F. 3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F. 3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that

(continued...)

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements." <u>McFarland v. Scott</u>, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested. <u>See</u> 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); <u>accord</u> <u>Barry v. Bergen County Probation Dept.</u>, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of

---

[1](...continued)
approach here").

constitutional dimension." <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." <u>Engle v. Isaac,</u> 456 U.S. 107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76  (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  Nor may the court recharacterize a ground asserted under state law into a federal constitutional claim.[3]

---

[2] <u>See</u>, <u>e.g.</u>, <u>Withrow v. Williams</u>, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying <u>Miranda</u>, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the <u>Miranda</u> warnings to be involuntary under due process criteria"); <u>Baker v. Barbo</u>, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3] <u>See</u> <u>Engle</u>, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); <u>Kontakis v. Beyer</u>, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process
(continued...)

"[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); <u>see also</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. <u>See</u> 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. <u>See</u> 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

---

[3](...continued)
rights).

8

> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits"). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

9

As the New Jersey courts adjudicated petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  <u>See</u> 28 U.S.C. § 2254(d).  Accordingly, this Court may not grant habeas relief to petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, <u>see</u> 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States, <u>see</u> 28 U.S.C. § 2254(a), (d)(2).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  <u>Williams</u>, 529 U.S. at 412; <u>see also</u> <u>Carey v. Musladin</u>, 127 S. Ct. 649, 653 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

10

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. For example, in <u>Carey v. Musladin</u>, the court reversed the granting of a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to apply the test of <u>Williams</u> and <u>Flynn</u> to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." <u>Carey</u>, 127 S. Ct. at 654.[4] In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an

_____

[4] <u>See also</u> <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

application may be incorrect, but still not unreasonable.[5]  Id.
at 409-10; see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir.
2005).  Thus, "[t]he federal *habeas* court should not grant the
petition unless the state court decision, evaluated objectively
and on the merits, resulted in an outcome that cannot reasonably
be justified under existing Supreme Court precedent." Outten v.
Kearney, 464 F. 3d 401, 414 (3d Cir. 2006) (citation and internal
quotation marks omitted).

### III.  DISCUSSION

A.  Testimony and Cross Examination of Denise Rand

In Ground One, Petitioner asserts that the admission of
Denise Rand's testimony regarding her statement to police and the
limitation of the cross examination of Rand regarding whether or
not she collected public assistance while living in Rhode Island,
violated due process and his right to confront witnesses.  As
factual support for Ground One, Petitioner states:

> The state's witness was allowed to read from
> her statement, during trial, claiming that,
> "it helped fresh her memory" but still give
> inconsistent testimony with her statement in
> hand.  The state's witness did not give her
> "real" address to prosecutor investigators
> and when trial counsel inquired the state

_____

[5] "[D]ecisions of federal courts below the level of the
United States Supreme Court may be helpful to [a court] in
ascertaining the reasonableness of state courts' application of
clearly established United States Supreme Court precedent, as
well as helpful amplifications of that precedent." Marshall v.
Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and
internal quotation marks omitted).

objected and trial court sustained the objection.

In the State's "Affidavit for Material Witness" it was revealed that the State's witness resided in the State of Rhode Island and collected Welfare. When Defense Counsel went to inquire about it, the State objected and the Court sustained the objection limiting Counsel's cross-examination.

(Pet., ¶ 12.A., Addendum II.A.)

Respondents argue that habeas relief is not warranted on Ground One because the admission of evidence and the scope of cross examination are questions of state evidentiary law.

Petitioner raised both parts of Ground One on direct appeal. In rejecting these claims, the Appellate Division relied on its opinion affirming the conviction of Petitioner's co-defendant, Kevin Baker, but added that Rand's prior statement was properly used under the rules of evidence to refresh her recollection:

Our opinion in <u>Baker</u> covers most of the same issues and we incorporate what we there said . . .

We add only the following brief comment as to . . . the use of Ms. Rand's prior out-of-court police statement. While the State did essentially introduce the statement through the witness, our review of the pertinent portions of the transcript convinces us that the statement was not introduced substantively as evidence of a prior inconsistent statement. Rather, it was properly used in an effort to refresh the witness's obviously impaired recollection. We are also convinced that, although somewhat reluctantly, she conceded that the statement did refresh her recollection. The jury, moreover, was properly instructed as to its

13

> limited use under <u>N.J.R.E.</u> 612.   See <u>State v.</u>
> <u>Carter</u>, 91 N.J. 86, 122 (1982).

<u>State v. Washington</u>, Docket No. A-3943-96T4 slip op., pp. 5-6

(N.J. Super., App. Div., Mar. 17, 1999).

In the <u>Baker</u> opinion, the Appellate Division determined that

the trial court had properly limited the scope of cross

examination of Rand to relevant issues:

> [T]he trial court conscientiously exercised
> its discretion in limiting defense counsel's
> cross-examination of Rand.  The court
> permitted counsel to explore fully the
> subject of Rand's use of drugs.  Counsel was
> not entitled to elicit testimony concerning
> how Rand was able to acquire cocaine in light
> of her unemployment.  This subject was wholly
> irrelevant to any material issue in the case
> and was properly barred by the trial court.

<u>State v. Baker</u>, Docket No. A-1143-96T3 slip op., p. 4 (N.J.

Super., App. Div., Feb. 23, 1998).

The Supreme Court has held that "the Due Process Clause does

not permit the federal courts to engage in a finely tuned review

of the wisdom of state evidentiary rules." <u>Marshall v.</u>

<u>Lonberger</u>, 459 U.S. 422, 438 n.6 (1983).  The admissibility of

evidence is generally a question of state law which is not

cognizable under habeas review.  <u>See</u> <u>Keller v. Larkins</u>, 251 F.3d

408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however,

cannot decide whether the evidence in question was properly

allowed under the state law of evidence").

In <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991), the Supreme Court

held that the state court's admission in petitioner's trial for

murdering his infant daughter of the testimony of two physicians
that the child had suffered child abuse (evidence of rectal
tearing that was six weeks old and rib fractures that were seven
weeks old) did not violate due process because the evidence was
relevant to intent.

> The evidence of battered child syndrome was
> relevant to show intent, and nothing in the
> Due Process Clause of the Fourteenth
> Amendment requires the State to refrain from
> introducing relevant evidence simply because
> the defense chooses not to contest the point.
> Concluding, as we do, that the prior injury
> evidence was relevant to an issue in the
> case, we need not explore further the
> apparent assumption of the Court of Appeals
> that it is a violation of the due process
> guaranteed by the Fourteenth Amendment for
> evidence that is not relevant to be received
> in a criminal trial.  We hold that McGuire's
> due process rights were not violated by the
> admission of the evidence.

Id. at p. 70.

To be sure, the United States Court of Appeals for the Third
Circuit has held that the admission of evidence may violate due
process where the evidence "undermine[d] the fundamental fairness
of the entire trial."  Keller v. Larkins, 251 F. 3d 408, 413 (3d
Cir. 2001); see also Lesko v. Owens, 881 F. 2d 44, 51 (3d Cir.
1989) ("the erroneous admission of evidence that is relevant, but
excessively inflammatory, might rise to the level of a
constitutional violation"); Bisaccia v. Attorney General, 623 F.
2d 307, 313 (3d Cir. 1980) (when "the probative value of . . .
evidence, though relevant, is greatly outweighed by the prejudice

to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law"). However, this Court is not aware of any Supreme Court case clearly establishing that the use of a prior statement to refresh a witness's recollection constitutes a violation of federal constitutional rights, and Supreme Court case law suggests the contrary. See, e.g., Estelle, 502 U.S. at 70 (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction). Because the use of Rand's prior statement to refresh her recollection was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief on this ground.

Petitioner also argues in Ground One that the trial court violated his constitutional rights by sustaining the objection to defense counsel's questions regarding whether or not Rand collected public assistance in Rhode Island. To be sure, an accused has the right under the Due Process Clause "to confront the prosecution's witnesses for the purpose of challenging their testimony [and] the right to present his own witnesses to establish a defense." Washington v. Texas, 388 U.S. 14, 19 (1967). But "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise

16

inadmissible under standard rules of evidence." <u>Taylor v.</u>
<u>Illinois</u>, 484 U.S. 400, 410 (1988).  Because the trial court's
ruling on the scope of cross examination and the relevancy of
whether or not Rand had collected public assistance in Rhode
Island during a year other than the year of the murder, was not
contrary to, or an unreasonable application of clearly
established federal law, as determined by the Supreme Court,
Petitioner is not entitled to habeas relief on this ground.

## B.  Prosecutorial Misconduct

    In Ground Two, Petitioner asserts that the prosecutor's
failure to inform defense counsel that Denise Rand had given the
police a false address violates due process.  As factual support,
Petitioner asserts:

> The State filed an "affidavit in support of
> application for order and arrest warrant
> compelling appearance of material witness."
> For about a year, prior to trial, the State
> was unable to locate their witness.  The
> State found out that "their witness resided &
> collected welfare in the State of Rhode
> Island."  Also, that she did not live at the
> address that she originally gave them.  When
> trial counsel began to divulge, the State
> objected and then denied it.

(Pet., ¶ 12.B.)

    The government argues that habeas relief is not warranted on
Ground Two because the state court found that state officials
were not aware of Denise Rand's true address until that morning
and, therefore, they did not violate <u>Brady v. Maryland</u>, 373 U.S.
83 (1963), by failing do disclose this address previously.

The Supreme Court has held that the prosecution in a criminal proceeding has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant, either because the evidence is exculpatory or because it can serve to impeach a key prosecution witness.  See Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1967).  Supreme Court precedent clarifies that "[t]here are three components of a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985); see also California v. Trombetta, 467 U.S. 479, 488-89 (1984) (state's failure to retain breath samples was not unconstitutional where the chances are extremely low that preserved samples would have been exculpatory).

In this case, the record reflects that the Law Division Judge conducted an evidentiary hearing on July 29, 1996, at Petitioner's request, "to determine whether or not the State

18

complied with its obligation to turn over to the defendants and their counsel in a timely manner the whereabouts of Denise Rand so that she could have been interviewed and any other investigation leads could have been initiated in a timely manner." State v. Washington, Ind. No. 1950-08-95 transcript, pp. 23-24 (N.J. Super., Law Div., July 29, 1996).  Kenneth Curcio, investigator for the Camden County Prosecutor's Office, testified for the State and was cross examined.  The Law Division found as a fact that the State had not withheld discoverable information:

> After hearing the testimony of Detective Curcio, the Court finds that the State has not delayed finding Denise Rand so as to frustrate the defendants' efforts to . . . interview her in and mount a defense.  The Court is satisfied that it was not until this morning that Denise Rand's mother provided the name of Loretta Money, and it was through Loretta Money that the individual, Chester Young, was identified, and then through other investigative work, Chester Young's address was determined, and it was at his home early this morning that Denise Rand was found . . .

> *          *          *

> The defendants had the same information that the State had.  In other words, the defense has had for - at least, since July 10th and perhaps earlier, but at a minimum since July 10th, the defense has had the addresses or the address of Denise Rand's mother, and the defendants were as free as the State was to speak with Denise Rand's mother, who is Mrs. Trusty, to find out from her if she had any idea where her daughter might be staying. That was all the State did today, and the Court finds that there was no effort made by the State to directly or to indirectly

19

frustrate the defendants' discovery rights .
. . .

<u>State v. Washington</u>, Ind. No. 1950-08-95 transcript, pp. 35-36

(N.J. Super., Law Div., July 29, 1996).

> Section 2254(e)(1) provides:
>
>> In a proceeding instituted by an application
>> for a writ of habeas corpus by a person in
>> custody pursuant to the judgment of a State
>> court, a determination of a factual issue
>> made by a State court shall be presumed to be
>> correct.  The applicant shall have the burden
>> of rebutting the presumption of correctness
>> by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

The Supreme Court has emphasized that "[f]actual

determinations by state courts are presumed correct absent clear

and convincing evidence to the contrary, § 2254(e)(1), and a

decision adjudicated on the merits in a state court and based on

a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence

presented in the state-court proceeding, § 2254(d)(2)."  <u>Miller-</u>

<u>El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

Under § 2254(e)(1), this Court must presume that the New

Jersey court's factual finding that the State did not withhold

information regarding Rand's addresses is sound.  Petitioner has

not rebutted this presumption of correctness by clear and

convincing evidence, and he has not established that the decision

of the New Jersey courts was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding.  Accordingly, Petitioner is not
entitled to habeas relief on the <u>Brady</u> claim raised in Ground
Two.[6]

## C.  Ineffective Assistance of Counsel

In Ground Three, Petitioner asserts that trial counsel was
constitutionally ineffective in failing to pursue a motion for a
new trial, failing to challenge the indictment, failing to
investigate and call potential witnesses, failing to object to
erroneous jury instructions regarding accomplice liability under
<u>State v. Bielkiewicz</u>, 267 N.J. Super. 520 (App. Div., 1993), and
failing to file a timely notice of appeal.  As factual support,
Petitioner states:

---

[6] <u>See Matthews v. Ishee</u>, 486 F. 3d 883, 895-96 (6th Cir.
2007) (state court's factual finding, in rejecting prosecutorial
misconduct claim, that no preexisting plea deal existed in
exchange for prosecution witness's testimony, was not rebutted by
clear and convincing evidence in habeas proceedings, so as to
warrant grant of habeas relief on basis of a <u>Brady</u> violation for
failure to disclose plea deal during trial); <u>Moore-El v.
Luebbers</u>, 446 F. 3d 890, 900 (8th Cir. 2006) (state court's
finding that there was no credible evidence that there was an
agreement for leniency between prosecutor and prosecution witness
was entitled to presumption of correctness, and petitioner's
<u>Brady</u> claim based on states's failure to disclose purported
agreement did not rebut presumption); <u>Wisehart v. Davis</u>, 408 F.
3d 321, 323-24 (7th Cir. 2005) (finding by state supreme court
that there was no agreement between prosecution and its key
witness to testify against petitioner was binding upon federal
habeas court addressing petitioner's <u>Brady</u> claim, based upon
government's alleged failure to disclose agreement); <u>Shabazz v.
Artuz</u>, 336 F.3d 154 (2nd Cir. 2003) (habeas petitioner did not
present evidence sufficient to rebut presumption of correctness
afforded state court factual findings in rejecting <u>Brady</u> claim
regarding undisclosed promises of leniency to prosecution
witness).

The State presented a witness that claims she
and her cousin seen the crimes.   In a
statement to police and defense counsel, her
cousin contradicts what the witness claimed
to have witnessed.   On the day of trial,
counsel sends her cousin home, without
defendant's knowledge or consent.   Defendant
told counsel about alibi and several other
witnesses who could support defense, but he
never bothered to investigate.

The State presented a Ms. Denise Rand who
claimed to be an "eyewitness" to the crimes.
She claimed that, "Her & her cousin Tyrone
Moore were in the area buying drugs when they
witnessed the crimes."   Tyrone Moore denies
being in the area when the crime happened.
He claims, "they were [two blocks away] on
the corner of 10th and Van Hook Streets when
they heard the shots and walked to the area
where he heard the shots."   Also that,
"Denise Rand is being paid to lie."   On the
day of trial, Defense Counsel sent Mr. Moore
home without informing defendant.   Petitioner
informed counsel of an alibi witness who gave
Counsel's investigator a statement "days"
before trial, which petitioner was unaware of
and did not receive until 'Four (4 1/2) and
an half years' later.   After trial, counsel
filed "A Motion for a New Trial," claiming
"he was ineffective for not calling Ty
Moore."   The day it was suppose[d] to be
heard, counsel withdrew.   Counsel's failures
consist of failing to pursue Motion for a New
Trial; to challenge the indictment; to
investigate, present Alibi and Third-Party
guilt defenses; to object[] to erroneous jury
instruction on "Accomplice Liability;" to
file direct appeal, [petitioner had to file a
pro se, nunc pro tunc, Notice of Appeal].   In
petitioner's (2nd) petition for PCR, on
remand, trial counsel submitted two (2)
certification admitting his own
ineffectiveness.

(Pet., ¶ 12.C., Addendum II.C.)

22

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

23

> In making this determination, a court hearing
> an ineffectiveness claim must consider the
> totality of the evidence before the judge or
> jury. Some of the factual findings will have
> been unaffected by the errors, and factual
> findings that were affected will have been
> affected in different ways. Some errors will
> have had a pervasive effect on the inferences
> to be drawn from the evidence, altering the
> entire evidentiary picture, and some will
> have had an isolated, trivial effect.
> Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to
> have been affected by errors than one with
> overwhelming record support. Taking the
> unaffected findings as a given, and taking
> due account of the effect of the errors on
> the remaining findings, a court making the
> prejudice inquiry must ask if the defendant
> has met the burden of showing that the
> decision reached would reasonably likely have
> been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

(1) Was counsel constitutionally ineffective in failing to pursue the motion for a new trial?

Petitioner argues that trial counsel was ineffective in withdrawing the motion for a new trial. In his Reply, Petitioner explains that the "gist of the motion was, 'trial court improperly limited cross-examination;' and/or 'if trial court was correct, counsel was ineffective. Before the motion could be

24

heard, the other defendant filed a notice of appeal and the court lost jurisdiction.  On the day the motion was to be argued, petitioner's counsel withdrew stating he was going to file an appeal, to which he never did.  Petitioner filed a <u>pro</u> <u>se</u> notice of appeal . . .  Trial counsel should have pursue[d] the motion to establish a record of 'facts' and 'law' as to trial counsel's ineffectiveness."  (Reply, docket entry #17, p. 28.).

The record shows that the motion for a new trial filed by co-defendant Baker, in which Petitioner joined, sought a new trial on the grounds that (1) the trial court improperly sustained the prosecutor's objection to the statement made by counsel for Baker during summation that Tyrone Moore (Rand's cousin) could have been the shooter, and (2) "[i]f the Court was correct in denying defense counsel the ability to argue the bias of Denise Rand and the possibility that Mr. Moore was the shooter then defense counsel's strategic decision [not to call Moore] was predicated on incorrect understanding of the law."  (Letter from Office of Public Defender dated Oct. 24, 1996, p. 6, Respondents' Exhibit 4.)

Although counsel for Petitioner withdrew the motion for a new trial, Baker did not, and the Law Division denied Baker's motion.  Baker appealed the issue.  As to the first ground, the Appellate Division determined in <u>Baker</u>'s appeal that "the trial court did not abuse its discretion in precluding defense counsel from arguing that Tyrone Moore was the actual killer [because

25

n]either the evidence, nor any reasonable inference drawn from the evidence, supported such a claim." Stare v. Baker, Docket No. A-1143-96T3 slip op., p. 4 (N.J. Super., App. Div., Feb. 23, 1998).

As to ground two of the motion for a new trial, the Law Division found that counsel's performance in failing to subpoena Tyrone Moore was not constitutionally deficient because it was admittedly a strategic decision. Petitioner raised this ineffective assistance of counsel claim on direct appeal in his pro se supplemental brief. The Appellate Division summarily rejected the claim. See State v. Washington, Docket No. A-3943-96T4 slip op., p. 5 (N.J. Super., App. Div., Mar. 17, 1999) ("As to the other issues that are not duplicative [of the Baker appeal], with the exception of the ineffective assistance of counsel alibi issue, we find them to be without merit. As to the alibi contention . . . , we express no view as to its merit, leaving it for post-conviction review").

As the Supreme Court explained in Strickland, counsel's strategic decisions made after legal and factual investigation, are unchallengeable:

> a court must indulge a strong presumption
> that counsel's conduct falls within the wide
> range of reasonable professional assistance;
> that is, the defendant must overcome the
> presumption that, under the circumstances,
> the challenged action might be considered
> sound trial strategy . . . . There are
> countless ways to provide effective
> assistance in any given case. Even the best

26

> criminal defense attorneys would not defend a
> particular client in the same way . . .
>
> [S]trategic choices made after thorough
> investigation of law and facts relevant to
> plausible options are virtually
> unchallengeable; and strategic choices made
> after less than complete investigation are
> reasonable precisely to the extent that
> reasonable professional judgments support the
> limitations on investigation.

Strickland, 466 U.S. at 687, 690-91 (citations and internal

quotation marks omitted).

Because counsel's decision to withdraw the motion for a new

trial was strategic, this Court finds that New Jersey courts'

rejection of Petitioner's ineffective assistance of counsel claim

based on counsel's withdrawal of the motion for a new trial was

not contrary to, or an unreasonable application of, Strickland

and its progeny.

(2) Was counsel constitutionally ineffective in failing to
challenge the indictment?

Petitioner argues that counsel was constitutionally

ineffective in failing to challenge the indictment when counsel

knew that the prosecutor had failed to present exculpatory

evidence to the grand jury.  Respondents argue that counsel was

not deficient in failing to challenge the indictment because the

indictment was not subject to challenge on that basis.

Respondents correctly assert that under New Jersey law,

prosecutors are not generally required to provide the grand jury

with evidence on behalf of the suspect.  See State v. Hogan, 144

27

N.J. 216, 235 (1996).  Under New Jersey law, an indictment should
be disturbed only on the clearest and plainest ground.  See State
v. Womack, 145 N.J. 576, 588 (1996).  Such a duty is triggered
"only in the rare case in which the prosecutor is informed of
evidence that both directly negates the guilt of the accused *and*
is clearly exculpatory." Hogan, 144 N.J. at 237.  Moreover,
"unless the exculpatory evidence at issue squarely refutes an
*element* of the crime in question, that evidence is not within the
prosecutorial duty we have set forth." Id.  As Petitioner has
not shown that the prosecutor knowingly failed to disclose
evidence which refutes an element of the crime for which he was
indicted, defense counsel was not constitutionally ineffective in
failing to move to dismiss the indictment.

   (3) Was counsel constitutionally ineffective in failing to
investigate and present witnesses?

   Petitioner argues that trial counsel was constitutionally
ineffective in failing to investigate and call several potential
defense witnesses.

   Petitioner initially presented this claim to the Appellate
Division on his first appeal from the order denying post-
conviction relief.  The Appellate Division rejected the claim in
part as follows:

          [D]efendant contended that he received
          ineffective assistance of counsel due to his
          trial attorney's failure to investigate the
          facts and call certain witnesses . . . .

[W]e agree with the Law Division judge that
the investigator's report of the interview
with Moore was not sufficient to establish a
prima facie case of ineffective assistance of
counsel.  Moore's bald assertion that Rand
could not have witnessed the shooting was
unaccompanied by a detailed description of
the scene and the exact whereabouts of the
parties.  Viewed indulgently, this was weak
evidence at best.  Moreover, Moore placed
defendant near the events in question.  The
judge could reasonably have concluded that
Moore's unverified account was unreliable and
perhaps damaging to defendant's case.

So too, nothing was presented indicating that
Reardon would have been a favorable witness
to the defense.  She apparently was Baker's
girlfriend, and might have provided some
exculpatory information as to him.  However,
there is no reason to believe that her
testimony would have been helpful to
defendant.

We come to a different conclusion regarding
Collins.  We are of the view that the judge
should have overlooked various procedural
objections once Collins' certification was
submitted.  Specifically, the judge should
have afforded counsel an opportunity to call
Collins so that his credibility could be
assessed . . .

State v. Washington, Docket No. A-3140-00T4 slip op., pp. 6-7

(N.J. Super., App. Div., June 27, 2002).

On remand, the trial court heard the testimony of Collins.

The Law Division rejected the ineffective assistance of counsel

claims based on the failure to call Collins and other witnesses

on the merits.  The Appellate Division affirmed as follows:

[T]he judge was entitled to consider Collins'
convictions in assessing his credibility at
the remand hearing.  Moreover, the judge made
separate factual findings to conclude

29

Collins' projected testimony would not have
affected the outcome of the trial because of
his bias and his contradictory statements of
when defendant left his apartment . . . .
Giving proper deference to the findings of
the PCR judge and based on the record, we
concur that defendant did not establish a
prima facie case of ineffective assistance of
trial counsel . . . .

Moreover, we concur with the judgment of the
PCR judge that the additional certifications
were insufficient . . . .  Any testimony
based on the certification of Anna Griffins
as to alleged post-trial statements of Rand
was subject to exclusion as inadmissible
hearsay, and, in any event, the alleged
remarks of Rand were post-trial . . . .  The
certification of Investigator Harry Reubel is
insufficient since no certification by Sartin
of his observations was submitted and the
observations do not contradict Rand.  Michael
Friedman's certification that he advised
trial counsel to obtain an identification
expert is without merit since there is no
showing as to what any such expert would
testify to and no basis shown for
admissibility at trial.  The certification of
trial counsel that he did not adequately
consider the admissibility of Moore's
statements and did not exhaustively
investigate the facts is similarly
insufficient to reasonably infer that the
outcome of the trial would have been affected
since, as earlier noted, both Moore and
Collins would place defendant at the scene of
the crime within the time of the murders.
Finally, Janey Levey's certification that
Moore's testimony as to the observation point
was flawed is of little value since Ms. Levey
viewed the scene years after the murders.
Finally, defendant's argument that Levey's
inability to locate a videotape of her
observations constitutes a basis for further
hearing is totally without merit.  Obviously
such evidence would not have affected the
outcome of the trial since it was not in
existence at that time.

State v. Washington, Docket No. A-4730-02T4 slip op., pp. 11-13
(N.J. Super., App. Div., Nov. 9, 2005).

The New Jersey courts' adjudication of Petitioner's claim
that trial counsel was constitutionally ineffective in failing to
investigate and call various witnesses was not contrary to, or an
unreasonable application of Strickland and its progeny.  Thus,
Petitioner is not entitled to habeas relief on this claim.

(4) Was trial counsel constitutionally ineffective in
failing to object to jury instructions?

Petitioner contends that counsel was constitutionally
deficient in failing to argue that the jury instructions on
accomplice liability did not comply with State v. Bielkiewicz,
267 N.J. Super. 520 (App. Div. 1993).  Petitioner raised this
claim on direct appeal in his pro se supplemental brief.  The
Appellate Division summarily rejected the claim, presumably
because Petitioner was not entitled to the charge since the
evidence did not show that Petitioner was less culpable than his
accomplice.  "[A] state court's interpretation of state law,
including one announced on direct appeal of the challenged
conviction, binds a federal court sitting in habeas corpus."
Bradshaw v. Richey, 546 U.S. 74, 76 (2005).  Because Petitioner
was not entitled to the Bielkiewicz charge as a matter of state
law, the decision that Petitioner's counsel was not
constitutionally ineffective in failing to seek the instruction

was not contrary to, or an unreasonable application of

Strickland.

    (5) Was counsel constitutionally ineffective in failing to
file a notice of appeal?

    Petitioner argues that counsel was constitutionally

ineffective in failing to file a notice of appeal within 45 days

of the entry of the judgment of conviction.  Insofar as

Petitioner filed a pro se notice of appeal and he was able to

pursue a direct appeal, Petitioner was not prejudiced.

Accordingly, the New Jersey courts' rejection of this ineffective

assistance of counsel claim was not contrary to, or an

unreasonable application of Strickland.

D.  Cumulative Errors and Innocence

    In Ground Four, Petitioner asserts that he should be given a

new trial due to cumulative errors and because he is innocent.

As factual support, Petitioner states:

> Petitioner has proclaimed his innocence from
> the beginning.  Petitioner had about "6-12"
> witnesses who could've supported his claims
> and/or contradicted the state's witness and
> dismantled their case.  Neither trial counsel
> bothered to call any witnesses.  (Petitioner
> had a joint trial.)
>
> Petitioner was charged with a 1995 double-
> homicide, in which the State presented one
> witness.  Petitioner was given a co-defendant
> who he didn't associate or socialize with.
> The only thing that connected defendants was
> the State's witness.  The State's witness
> claims, "she witness[ed] petitioner shoot one
> victim and the other defendant shot the other
> victim, simultaneously, with two different
> weapons, and run by her."  Ballistic report

32

say: "the three (3) shell casings found at
the scene came from the same gun."  In
discovery, there were a host of people who
gave statements, to the prosecutor's
investigators, that contradict what the
State's witness claims to have witnessed,
that were never investigated by defense.

Petitioner came to the scene after the crime.
It's evidence and a host of witnesses to
support petitioner's claim.  Petitioner
informed Trial counsel of Dwight Collins,
Patricia Miller, Beverly Branch and several
witnesses that were in discovery that can
attest to Denise Rand, no petitioner being
there at the time of the crimes and that
petitioner came up afterwards.  The other
defendant's Counsel, Fred Gumminger, called
the Prosecutor's Office, on March 15, 1995,
and advised Assistant Prosecutor Greg Smith
that: "he was investigating witnesses who
were in the area, at the time of the crimes,
who would state under oath that Kevin Baker
was not in the area at that time and
petitioner coming to the scene after the
shooting."  No investigation was ever done on
behalf of petitioner to those effects.  At
petitioner's petition for PCR, on remand,
Fred Gumminger gave petitioner a
certification stating that: "he was not aware
of petitioner's alibi witness and if he was
he could h ave called him."  Petitioner
informed Trial counsel that, "he came to the
scene after the crimes, discovered the
victims and made the 911 call."  Counsel
informed petitioner that, "he was going to
get the 911 tapes and call an expert witness
to have the voice analyzed to see if it was
petitioner's voice."  The Ballistic Report
was physical evidence that refuted the
State's witness's testimony, the State's case
and helped establish[] petitioner's "Actual
Innocence."  Trial counsel should have
retained several expert witnesses, but he
presented no witnesses.

(Pet., ¶ 12.D., Addendum II.D.)

Petitioner has cited no Supreme Court holdings regarding the cumulative error doctrine.  Some federal courts of appeals have found that "[t]he cumulative error doctrine provides relief only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." Jackson v. Johnson, 194 F.3d 641 at n. 59 (5th Cir.1999) (internal citation omitted).  To the extent that this doctrine is applicable at all on habeas review, given the absence of Supreme Court precedent, Petitioner is not entitled to relief on Ground Four because his trial was not fatally infected with constitutional errors.

Nor is Petitioner entitled to habeas relief on his actual innocence claim, as the Supreme Court has never held that the conviction and incarceration of an innocent person violates the United States Constitution.  See House v. Bell, 547 U.S. 518, 554 (2006) (declining to rule on petitioner's claim that his imprisonment and planned execution are unconstitutional because he is innocent; "We conclude here, much as in Herrera, that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it"); Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal conviction").  Accordingly, the rejection of

34

Petitioner's cumulative errors and actual innocence claims was
not contrary to, or an unreasonable application of, Supreme Court
precedent.

E.  Certificate of Appealability

The Court denies a certificate of appealability because
Petitioner has not made "a substantial showing of the denial of a
constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-
El v. Cockrell, 537 U.S. 322 (2003).

### IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and
denies a certificate of appealability.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
United States District Judge


Dated:   September 29, 2008